**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR ANDERSON LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1824 |
| | ) | |
| FEDERAL INSURANCE CO., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arthur Andersen LLP ("Andersen") alleges that an indemnification policy issued by Defendant Federal Insurance Company ("Federal") obligated Federal to defend Andersen against a class action arbitration demand brought by two retired Andersen partners, arising from Andersen's handling of certain retirement benefits. Claiming that Federal has refused to meet this obligation, Andersen brings claims for declaratory judgment, breach of contract, and violation of the Illinois Insurance Code. Federal moves to dismiss Andersen's complaint as barred by *res judicata* and collateral estoppel, contending that Andersen is attempting to relitigate claims that went to trial in a previous lawsuit between the parties, concerning Federal's duty to defend Andersen against similar claim demands asserted in various forms by hundreds of retired Andersen partners. For the reasons set forth below, Federal's motion is granted in part and denied in part.

## BACKGROUND

For purposes of a motion to dismiss, the court presumes the truth of all of the plaintiff's well-pleaded factual allegations. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Although this ordinarily entails an examination merely of the allegations in the complaint, a court may also take judicial notice of matters in the public record, including pleadings and orders in previous cases. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (collecting cases); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (proceedings in other courts proper subject of judicial notice). In this case, as the basis for dismissal is *res judicata*, the

court takes judicial notice of pleadings, orders, and trial transcripts from previous litigation between the parties, specifically *Fed. Ins. Co. v. Arthur Andersen LLP*, No. 03 C 1174 (N.D. Ill.) (St. Eve, J.) (hereinafter, "*Andersen I*").

**A.      Andersen's Claims Against Federal in the Present Action**

Beginning in 2002, in the wake of Andersen's well-publicized difficulties following the collapse of Enron, *see Andersen I*, 2005 WL 1838440, at *3 (N.D. Ill. Aug. 2, 2005), Andersen began receiving claim demands from retired partners for lump sum payments of certain retirement benefits.  (Compl. ¶ 13.)  On June 17, 2005, two such retired partners, Paul W. Hoffman and Ronald C. Wade, filed a "Demand for Class Arbitration" (the "Hoffman Arbitration Demand") with the American Arbitration Association on behalf of themselves and all others similarly situated.[1]  (*Id.* ¶ 14.)  The Hoffman Arbitration Demand asserts, *inter alia*, that in late 2002, Andersen rescinded an agreement to pay to "retired partners or participating principals" a monthly stipend known as "Basic Retirement Benefits" ("BRB") and also suspended payment of certain "Early Retirement Benefits" ("ERB").  (*Id.* ¶ 15 (citing Hoffman Arbitration Demand ¶ 1).)  Seeking a declaratory judgment with regard to certain aspects of Andersen's partnership agreement, the Hoffman Arbitration Demand makes numerous allegations pertaining to Andersen's responsibility for alleged breaches of fiduciary duty; in general, these allegations accuse active Andersen partners of enhancing their financial positions, post-Enron, at the expense of partnership assets and thus the interests of the retired partners.  (*Id.* ¶ 16; Hoffman Arbitration Demand ¶¶ 17-18, 30-33.)  Andersen acknowledges in its complaint that the Hoffman Arbitration Demand was "related to" the other claim

---

[1]      A provision of Andersen's partnership agreement, attached to the Hoffman Arbitration Demand, calls for arbitration of any and all disputes arising from the agreement. (Hoffman Arbitration Demand ¶¶ 8-9, Ex. B to Compl.)  Both the Hoffman Arbitration Demand and the portions of the Complaint that specifically refer to it were filed under seal, as they contain non-public information relating to Andersen's partnership agreement.  The court thus describes the allegations in the Hoffman Arbitration Demand without specifics; in any event, the particular details of that claim demand are not relevant to the court's resolution of the pending motion.

demands received since 2002, which also sought lump sum payments of retirement benefits "purportedly based on Andersen's alleged past practice and exercise of discretion in the handling of such payouts and its past advice given in regard thereto." (Compl. ¶ 13.)

Andersen alleges that Federal has a duty to defend Andersen against the Hoffman Arbitration Demand and to indemnify Andersen against any potential loss, pursuant to Executive Protection Policy No. 8146-02-90B (the "Policy"), issued by Federal and effective at all times relevant to this litigation. (*Id.* ¶¶ 1, 7-10.) The Policy requires Federal to pay "on behalf of each of the Insureds all Loss for which the Insured becomes legally obligated to pay on account of any Claim . . . made against the Insured . . . for a Wrongful Act committed, attempted or allegedly committed or attempted . . . by an Insured or by any person for whose Wrongful Acts the Insured is legally responsible." (*Id.* ¶ 11 (quoting Policy § 1, Ex. A to Compl.).) Andersen is an "Insured" within the meaning of the Policy. (*Id.* ¶ 1.) The Policy further provides that Federal "shall have the right and duty to defend any Claim covered by this coverage section. . . . even if any of the allegations are groundless, false or fraudulent." (*Id.* ¶ 12 (quoting Policy § 3.).) "Loss" includes expenses for "Defense Costs"; "Claim" is defined in part as "a civil proceeding" made "against any Insured for a Wrongful Act"; and "Wrongful Act" is in turn defined as "any breach of the responsibilities, obligations or duties imposed upon fiduciaries" of certain employee benefit plans. (*Id.* (quoting Policy § 15).) According to Andersen, these provisions require Federal to "pay all costs, including attorneys' fees and supplemental expenses, incurred by [Andersen] in defense of claims for which [Federal] might incur a duty to indemnify . . . unless it is clear from the face of the underlying claim demands that no allegation states any fact or any theory which brings the claim demands within, or *potentially* within, the coverage of the Policy." (*Id.* ¶ 10 (emphasis in original).) Andersen alleges that the breaches of fiduciary duty asserted in the Hoffman Arbitration Demand constitute "Wrongful Acts" under the Policy, thus entitling Andersen to coverage. (*Id.* ¶ 17.)

On July 20, 2005, at a meeting between Andersen representatives and Federal's lead

adjuster Greg Smith and Federal counsel, Andersen "gave Federal actual notice of the Hoffman Demand and Andersen's need for assistance with [its] defense . . . ." (*Id.* ¶ 18.) Andersen's "lead defense counsel . . . explained in detail the claims being pursued in the Hoffman Demand and the plans for defending them," and answered questions posed by Smith. (*Id.*) Andersen's counsel also forwarded a copy of the Hoffman Arbitration Demand to Federal. (*Id.*) In response, Andersen alleges, Federal "did nothing." (*Id.* ¶ 19.) Andersen contends that Illinois law required Federal to compare the allegations made against Andersen with the Policy provisions to determine the potential for coverage and inform Andersen accordingly; Andersen alleges that Federal failed even to undertake this duty-to-defend analysis, much less provide Andersen with an answer. Left to defend itself against the Hoffman Arbitration Demand on its own, Andersen "has incurred substantial legal fees and costs." (*Id.*)

Andersen further alleges that Federal's refusal to defend Andersen is contrary to (1) Federal's "own admissions of having a duty to defend against substantially similar claims made by other retired Andersen partners"; and (2) a partial judgment order in *Andersen I*, holding that the Policy "gave rise to a duty to defend substantially similar claims" to those presented in the Hoffman Arbitration Demand. (*Id.* ¶ 20.) The court discusses *Andersen I* below. Federal's alleged admissions are contained in a November 2002 letter from Smith to Andersen's general counsel regarding a separate class action lawsuit, also discussed below, in which Federal simply consented to Andersen's choice of counsel and agreed to defend under a reservation of rights. (Letter from Smith to Raimondo of November 27, 2002, Ex. C to Compl.)

Andersen brings a claim for declaratory judgment, seeking a declaration that Federal has a duty to defend the Hoffman Arbitration Demand and is therefore estopped to deny coverage under the Policy (Count I), (*id.* ¶ 26); a breach of contract claim seeking damages for defense costs incurred (Count II), (*id.* ¶ 32); and a claim under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, alleging that Federal acted "vexatiously and unreasonably" in refusing to defend

4

Andersen, and seeking attorneys fees, costs, and statutory damages. (*Id.* ¶¶ 38-39.)

## B. Proceedings in *Andersen I*

### 1. Pleadings and Pre-trial Rulings

As noted, the Hoffman Arbitration demand was not the first claim asserted by retired Andersen partners, nor is the present action the first litigation concerning Federal's duty to defend such claims. On March 18, 2003, Federal filed a declaratory judgment action (*Andersen I*), seeking a declaration that Federal did not owe a duty to defend or indemnify Andersen against claim demands brought by retired partners, of which Andersen notified Federal on or before September 27, 2002. (*Andersen I* First Am. Compl. ¶¶ 43, 50, 57, 62, 64-122, Ex. 1 to Arthur Andersen LLP's Memorandum in Opposition to Federal Insurance Company's Motion to Dismiss ("Pl.'s Resp.").) Specifically, these claim demands consisted of an arbitration demand filed by one retired partner (the "Samore Arbitration"), (*id.* ¶¶ 37-44); a California suit brought by three retired partners (the "Waters Action"), (*id.* ¶¶ 45-51); a class action suit in this district that plaintiffs voluntarily dismissed and then re-filed as an arbitration demand (the "Bryce Action"), (*id.* ¶¶ 52-58); and 214 letters from retired partners ("Election Letters") in which the retirees demanded immediate lump sum payments of certain retirement benefits. (*Id.* ¶¶ 59-63.) After Andersen gave Federal notice of additional claims, Federal amended its complaint to cover additional arbitration demands brought separately by three retired partners (the "Moriarty Arbitration", the "Connolly Arbitration", and the "Small Arbitration"), (*Andersen I* Second Am. Compl. ¶¶ 59-77, Ex. 3 to Pl.'s Resp.), as well as three more Election Letters. (*Id.* ¶¶ 78-82.)

Andersen answered on September 11, 2003, asserting counterclaims against Federal. As in the present action, Andersen brought claims for declaratory judgment, breach of contract, and violation of Section 155 of the Illinois Insurance Code, arising from Federal's alleged failure to

defend the retired partners' claims.[2]  (*Andersen I* Second Am. Compl. Countercl. ("*Andersen I* Countercl.") ¶¶ 27-44, Ex. 2 to Memorandum in Support of Federal Insurance Company's Motion to Dismiss ("Def.'s Mem.").)  On March 1, 2004 Federal again amended its complaint to encompass two more arbitration demands (the "Powers Arbitration" and the "Tripp Arbitration"), (*Andersen I* Third Am. Compl. ¶¶ 78-92, Ex. 6 to Pl.'s Resp.), and Andersen likewise amended its answer and incorporated by reference its counterclaims to include the two additional arbitration demands. (*Andersen I* Answer to Third Am. Compl. ¶¶ 78-92, 167-92, Ex. 7 to Pl.'s Resp.)  On May 18, 2004, Judge St. Eve granted Andersen's motion for partial judgment on the pleadings, holding that Federal owed Andersen a duty to defend the underlying claims because the claimants had alleged wrongful acts that were at least potentially within the scope of coverage under the Policy. (*Andersen I* Order of 5/18/2004 (77), Ex. D to Compl.)  Both parties then filed motions for summary judgment on the remaining issues of whether Federal had breached that duty, whether certain Policy provisions operated to exclude coverage, and whether Federal was liable pursuant to Andersen's Illinois Insurance Code counterclaim; briefing concluded on May 18, 2005.  *See Andersen I*, 2005 WL 1838440, at *10 n.14, 12-18.

As noted, Andersen received the Hoffman Arbitration Demand on June 17, 2005, and brought it to Federal's attention on July 20, 2005.  (Compl. ¶¶ 14, 18.)  Neither party amended their pleadings in *Andersen I* in response to the new claim.  This was not, however, the first claim demand that Andersen had received from Hoffman and Wade: theirs were among the 217 Election Letters encompassed by the pleadings, and Andersen in fact included their letters in the exhibit of Election Letters attached to its counterclaims.  (Letter from Hoffman to Gorrell and Cardoso of April 17, 2002, Ex. A to *Andersen I* Countercl., Ex. 2 to Def.'s Mem.; Letter from Wade to Gorrell and

---

[2]    Andersen also sought relief with regard to another arbitration demand (the "Viets Arbitration") that Federal had not added to its Second Amended Complaint.  (*Andersen I* Countercl. ¶ 26.)

Cardoso of April 20, 2002, Ex. A to *Andersen I* Countercl., Ex. 2 to Def.'s Mem.) In their April 2002 letters, Hoffman and Wade requested immediate lump sum payments of their remaining ERB balances, but made no mention of monthly BRB payments, nor of any claims for breach of fiduciary duty, which they identified for the first time in the Hoffman Arbitration Demand. Instead, in their letters, both Hoffman and Wade based their demands solely on provisions of Andersen's partnership agreement. (*Id.*) Federal nevertheless emphasizes language from Andersen's counterclaims, particularly its statement that "claim demands had arrived in three *interconnected forms*: letters making demands and requests for immediate payment, class action lawsuits, and arbitration proceedings." (*Andersen I* Countercl. ¶ 13 (emphasis added).) Federal notes, further, Andersen's allegation that it had been served with a class action lawsuit and arbitration demands "*in conjunction with*" receipt of the Election Letters, (*id.* ¶ 17 (emphasis added)), and that "[a]side from their format, the underlying claim demands track one another." (*Id.* ¶ 14.)

On August 2, 2005, Judge St. Eve denied the parties' cross-motions for summary judgment, concluding, *inter alia*, that issues of material fact existed as to whether Federal had breached its duty to defend, whether the Policy nonetheless precluded coverage, and whether Federal had engaged in "vexatious and unreasonable" conduct for purposes of Andersen's Illinois Insurance Code counterclaim. *Andersen I*, 2005 WL 1838440, at *12-18. On January 3, 2006, the court granted Federal's motion to bifurcate for trial the issues related to Federal's duty to defend from the court's separate resolution of the Illinois claim, which required decision by the court rather than by the jury.[3] (*Andersen I* Order of 1/03/2006 (196).) On January 25, 2006, ruling on Andersen's motion to clarify the burden of proof at trial, the court held that Andersen bore the burden of proving that Federal breached its duty to defend; but if Andersen did so, Federal could defeat the claim by

---

[3] Following trial of the duty-to-defend issues, the parties agreed to proceed with the Illinois Insurance Code claim on briefs. (*Andersen I* Agreed Order Regarding Trial of Section 155 Phase (365), entered June 13, 2006.)

proving that Andersen relieved Federal of that duty by "being unresponsive and uncooperative to Federal's requests." (*Andersen I* Order of 1/25/2006 (226), Ex. 3 to Def.'s Mem., at 3.)

In the meantime, on December 19, 2005, Andersen had received yet another class action arbitration demand (the "Huelsmann Arbitration"), and had notified Federal of the claim on December 21, 2005. Federal filed a separate declaratory judgment action regarding the Huelsmann Arbitration on January 25, 2006, which is pending before this court. *See Federal Ins. Co. v. Arthur Andersen LLP*, No. 06 C 462 (N.D. Ill. filed Jan. 25, 2006).

### 2. Trial Proceedings

*Andersen I* proceeded to trial on February 21, 2006. In Andersen's opening statement, its counsel specifically referred to the Hoffman Arbitration Demand:

> I'll fast forward to 2005. Andersen and [co-defendant's] counsel sat down with [Federal lead adjuster] Smith in a face-to-face meeting; told him about a Hoffman class arbitration demand: "Any questions? We'll explain whatever you want." Within a week or two, all these pleadings come, they're given to Mr. Smith. Now, he's got a chance to do a comparison test. Did he do what he said: Make that call? Compare the two—the allegations—and make that call? We're here on trial in February, 2006. We still haven't had a response from Mr. Smith.

(*Andersen I* Tr. at 48:7-17 (2/21/06), Ex. 4 to Def.'s Mem.) Counsel returned to the subject shortly thereafter:

> And this Hoffman arbitration we talked about, we're still sitting here today. There's still no response from Mr. Smith. We're still waiting on that one. You're going to have to ask yourself: Did Federal really want to help Andersen—really want to defend?
>
> The Answer is pretty clear: No, it didn't. It breached.

(*Id.* at 51:13-19.) Federal did not object to these statements.

Andersen also referred to the Hoffman Arbitration Demand in a series of demonstrative slides accompanying its opening statement. Four slides contained the identical heading "Did

Federal Compare the Allegations to the Policy and 'MAKE THAT CALL?'"[4]  Beneath this, Andersen

listed Federal's receipt of underlying claims, organized under month/year headings, with the word

"No" after each claim listed, along with a "check" in a box labeled "Breach."  (*Andersen I*

Demonstrative Slides, Ex. 5 to Def.'s Mem.)  The first slide listed the Bryce Action (in its original

lawsuit form), submitted in May 2002; the second listed the Bryce Action (resubmitted as an

arbitration demand), the Samore Arbitration, the Waters Action, and "Over 200 Demand Letters",

submitted in September 2002; the third listed the Viets, Connolly, Moriarty, and Small Arbitrations,

and "Over 200 Demand Letters Resubmitted" in March 2003; and the fourth listed the July 2005

Hoffman Arbitration Demand.  (*Id.*)  The slides were identical, apart from the claim-specific

information, except that the Hoffman Arbitration Demand slide also stated: "With this trial starting

in February 2006—more than 6 months later—STILL NO RESPONSE FROM FEDERAL".  (*Id.*)

Another slide, labeled "Federal Had What It Needed and Requested", listed Federal's

receipt of claims submitted by Andersen, organized again in four groups by month and date; the

Hoffman Arbitration Demand (July 2005) was the fourth.  (*Id.*)  On yet another slide, the Hoffman

Arbitration Demand was the final entry on a list of ten specific claims that purported to show

Federal's alleged delay in responding.  (*Id.*)  Six other slides listed the senders of the "Over 200

Demand Letters," including Hoffman and Wade.  (*Id.*)  Federal did not object to these references,

nor is the court aware of any argument that the Hoffman Arbitration Demand was not part of the

case in *Andersen I*.

By the time the case went to the jury, however, the Hoffman Arbitration Demand appears

to have dropped out, as the jury instructions and verdict form in *Andersen I* lacked any reference

to the Hoffman claim.  The court instructed the jury to give "separate consideration" to each claim

---

[4]        Neither the slides nor the portions of the transcript of Andersen's opening statement
that Federal has attached to its motion make clear whether "call" referred to Federal's decision on
whether to provide coverage, or to an actual phone call or other contact to Andersen.

brought by Andersen and its co-defendant (an Andersen partner) against Federal, and vice-versa. (*Andersen I* Final Jury Instr., Ex. 9 to Pl.'s Resp.)  The court further explained that Andersen had "made three separate submissions to Federal, each containing separate claims," and listed the lawsuits, arbitration demands, and Election Letters (as a group, not individually by author) submitted in May 2002, September 2002, and March 2003.[5]  (*Id.*)  Neither July 2005 nor the Hoffman Arbitration Demand was listed.  The jury was instructed to determine, with respect to each underlying claim, (1) whether Federal breached its duty to defend; and (2) whether Andersen decided to knowingly forgo Federal's assistance or was so unresponsive and uncooperative with respect to Federal's requests as to relieve Federal of that duty.  (*Id.*)

Similarly, the jury's verdict form listed the underlying claims, grouped according to the above three submission dates; the Hoffman Arbitration Demand was not among them, nor was July 2005 listed as a submission date.  (*Andersen I* Verdict Form, Ex. 11 to Pl.'s Resp.)  Neither party explains the absence of the Hoffman claim from the jury instructions or verdict form, nor has either party identified any reference to that claim in the *Andersen I* record after Andersen's opening statement. So far as the court is aware, there was no comment or discussion on the record in that proceeding, reflecting any kind of formal withdrawal or preservation of the Hoffman claim.  Nor has either party presented information concerning when the verdict form was prepared—i.e., whether it was prepared well before Andersen's opening statement, or instead after the evidence had been presented to the jury.

---

[5]    The jury instructions listed 214 Election Letters submitted in September 2002, and three additional Election Letters in March 2003.  Neither the jury instructions, verdict form, nor the pleadings in *Andersen I* that the parties have attached to their motions here, reveal which group contained the Hoffman and Wade letters, but as both were dated April 2002, the court assumes they were in the first group.

So far as the court is aware, there was no reference in the *Andersen I* trial to the Powers or Tripp Arbitrations, contained in Federal's Third Amended Complaint and in Andersen's answer, incorporating by reference its counterclaims, to that amended pleading.  (*Andersen I* Answer to Third Am. Compl. ¶¶ 78-92, 167-92.)

The jury returned its verdict on March 3, 2006, finding that Federal had breached its duty to defend with respect to each underlying claim submitted to the jury, but that Federal was relieved of that duty with respect to the Bryce Action, the Samore and Moriarty Arbitrations, and the 214 Election Letters submitted in September 2002. (*Id.*) Federal was not relieved of its duty with respect to the Waters Action, nor the Small, Connolly, and Viets Arbitrations, nor the three additional Elections Letters submitted in March 2003. (*Id.*) Andersen notes that Election Letters from Waters, Small, and Viets were among the 214 for which the jury found that Federal had been relieved of its duty to defend, even though the jury also concluded that Federal was not relieved of that duty with respect to Waters' suit or Small and Viet's arbitration demands.[6] (Pl.'s Resp., at 6.) After the close of trial, however, Judge St. Eve granted Federal's motion for a directed verdict with respect to the Small, Connolly, and Viets Arbitrations, as well as the three additional Election Letters. (*Andersen I* Order of 4/4/06 (325).)

The court denied Federal's subsequent motion for a directed verdict with respect to the Waters Action, which constituted the only portion of the jury's verdict that remained standing in favor of Andersen, (*Andersen I* Order of 7/19/06 (383)), and on January 24, 2007 entered a monetary judgment for Andersen of nearly $5.6 million, consisting mainly of settlement costs of the Waters Action. (*Andersen I* Order of 1/24/07 (402).) On January 31, 2007, Judge St. Eve denied Andersen's request for damages under Section 155 of the Illinois Insurance Code, concluding that Federal had not been "vexatious" or "unreasonable" in responding to the Waters Action. (*Andersen I* Order of 1/31/07 (403), at 2-3.) Both parties have appealed the jury verdict and several of the *Andersen I* court's rulings. *See Andersen I*, *appeal docketed*, No. 07-1245 (7th Cir. Feb. 1, 2007) & No. 07-1464 (7th Cir. Mar. 1, 2007).

Andersen filed the present action, pertaining to Federal's alleged refusal to defend the

---

[6]     Connolly had not submitted an Election Letter.

Hoffman Arbitration Demand, on April 3, 2006. Federal contends that Andersen is attempting to relitigate claims that had been tried in *Andersen I*, and moves to dismiss Andersen's complaint as barred by the doctrines of *res judicata* and collateral estoppel.

**DISCUSSION**

I. **Legal Standard**

Federal moves to dismiss Andersen's claims pursuant to FED R. CIV. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the court accepts all well-pleaded allegations in a claim as true and draws all reasonable inferences in favor of the plaintiff. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Stated differently, a complaint will survive a Rule 12(b)(6) motion if it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

Although neither party addresses the issue, the court notes that *res judicata* and collateral estoppel are affirmative defenses, pursuant to which dismissal under Rule 12(b)(6) is generally not appropriate. *See U.S. Gypsum Co.*, 350 F.3d at 626 (impermissible to dismiss complaint based on statute of limitations or issue preclusion defense because a complaint "need not anticipate or attempt to defuse" an affirmative defense). Because such defenses often require the court to consider matters outside the complaint, a motion raising these defenses ordinarily must be treated as one for summary judgment. *See Gen. Elec. Capital Corp.*, 128 F.3d at 1080 (citing FED. R. CIV. P. 12(b); *see, e.g., D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 259 n.1 (7th Cir. 1997) (district court properly construed motion to dismiss on *res judicata* grounds as motion for summary judgment). As noted, however, a court in ruling on a motion to dismiss may

take judicial notice of matters in the public record, including pleadings and orders in previous cases, without converting a Rule 12(b)(6) motion into a motion for summary judgment. *See Gen. Elec. Capital Corp.*, 128 F.3d at 1080 (collecting cases); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court documents from prior state court litigation in deciding defendants' motion to dismiss for failure to state a claim). Thus, "[w]hen a defendant raises *res judicata* as a defense and it is clear from the complaint's face, and matters of which the district court may take judicial notice[,] that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper." *Wilson v. Bob Watson Chevrolet, Inc.*, No. 03 C 5535, 2004 WL 432493, at *2 (N.D. Ill. Mar. 02, 2004) (Aspen, J.) (citing *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000)); *accord, e.g., Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 636 (7th Cir. 2001) (looking to public court documents filed in bankruptcy proceedings in affirming motion to dismiss on *res judicata* grounds); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000) (approving district court's reliance on state court order attached to motion to dismiss on *res judicata* grounds); *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir.1995) (affirming dismissal pursuant to Rule 12(b)(6) on *res judicata* grounds).

Significantly, Andersen does not object on procedural grounds to consideration of Federal's affirmative defenses, and in fact urges the court to consider materials from *Andersen I*. (Pl.'s Resp., at 3 n.2.) Accordingly, by taking judicial notice of the pleadings, orders, and trial transcripts from *Andersen I* in addition to the instant complaint, the court continues to treat Federal's motion as a Rule 12(b)(6) motion to dismiss, rather than convert it into a motion for summary judgment. *See Brown v. Chrysler Fin. Servs.*, No. 05 C 1117, 2006 WL 850881, at *3 (N.D. Ill. Mar. 24, 2006) (Andersen, J.) ("Because the basis for dismissal is *res judicata*, this Court may take judicial notice of pleadings and orders in the previous litigation between Plaintiff and [defendant].")

## II.     *Res Judicata* and Collateral Estoppel

Federal contends that in light of the proceedings in *Andersen I*, the doctrines of *res judicata*,

or, alternatively, collateral estoppel, prohibit Andersen from maintaining the present action. *Res judicata* (claim preclusion) "serves the interests of judicial economy and finality in disposing disputes by barring both the parties to a judgment and their privies from relitigating the identical cause of action." *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir. 1989) (citation omitted). To this end, "'a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir. 1985) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Maher v. FDIC*, 441 F.3d 522, 526 (7th Cir. 2006) ("*Res judicata* also bars litigation of claims that 'could have been raised' in the previous litigation, but were not.") (quoting *Golden v. Barenborg*, 53 F.3d 866, 869-70 (7th Cir. 1995)). In contrast, collateral estoppel (issue preclusion) "foreclos[es] relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994) (citations and internal quotation marks omitted).

As explained below, the court concludes that *res judicata* operates to bar Andersen's claims in the present action. As the court need not reach Federal's alternative collateral estoppel argument, the court's discussion of collateral estoppel will be less extensive. The court further notes that the parties briefed the pending motion prior to Judge St. Eve's ruling in *Andersen I* concerning Andersen's Illinois Insurance Code counterclaim; accordingly, the court addresses that claim separately from its preclusion discussion.

### A. *Res Judicata*

Because *Andersen I* proceeded in federal court, the federal rule of *res judicata* applies. *See Matter of Energy Co-op., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982)). Three requirements must be met for *res judicata* to bar a claim: "(1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final

judgment on the merits."[7]  *Id.* (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  The party seeking to invoke *res judicata* bears the burden of proving that the doctrine bars the second action.  *Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997).

Andersen does not contend that *Andersen I* did not result in a final judgment on the merits, nor that the parties are not identical here.  Andersen's claims will thus be barred if the causes of action were identical in *Andersen I* and the present suit.  For *res judicata* purposes, the Seventh Circuit defines a "cause of action" using the "operative facts" or "same transaction" test, under which "a cause of action consists of a single core of operative facts giving rise to a remedy."  *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993) (citation and internal quotation marks omitted); *Matter of Energy Co-op.*, 814 F.2d at 1230.  The result is that "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost."  *Allied-Signal,* 985 F.2d at 913 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986)).  The Seventh Circuit has explained that the intent of the inquiry is "to discover whether the plaintiff could have raised the issue in the first suit."  *Id.* (citing *Moitie*, 452 U.S. at 398.)

According to Federal, the requisite identity of claims is established here.  Federal notes that Andersen now pursues the same causes of action for declaratory judgment, breach of contract, and violation of the Illinois Insurance Code that it asserted in its *Andersen I* counterclaims.  (Def.'s Mem., at 8.)  Federal further argues that the Hoffman Arbitration Demand—the underlying claim that

---

[7]     The court notes that the Seventh Circuit recently articulated a somewhat different formulation of the second element: instead of "an identity of causes of action," a short line of cases refers to "an identity of the issues of the lawsuit."  *See, e.g., Maher*, 441 F.3d at 526; *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) (cited by *Maher* for this language and quoting *Dye v. United States Farm Servs. Agency*, 129 F. App'x 320, 322 (7th Cir. 2005)).  *Dye*, however, cites in turn to *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992), which uses the traditional "identity of the cause of action" language; so did the court in *Highway J Citizens Group v. United States Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006).  None of the cases using the *Maher* language explain the change, or suggest that it heralds any substantive change in the *res judicata* test.  The court thus proceeds under the assumption that the traditional formulation and analysis still applies.

Andersen now alleges Federal breached its duty to defend—arose from the "same set of operative facts" as the "claim demands from retired partners" that were the subject of *Andersen I*, including claim demands submitted by Hoffman and Wade in the form of Election Letters. (*Id.* at 8-9.) Most significantly, Federal urges, "Andersen specifically asked the jury to find that Federal breached the duty to defend in connection with the Hoffman Arbitration Demand." (*Id.* at 8.)

Andersen observes, however, that "claims regarding the Hoffman Arbitration were *never* submitted to the jury [in *Andersen I*] for resolution." (Pl.'s Resp., at 7 (emphasis in original).) According to Andersen, counsel "referred briefly" to the Hoffman Arbitration Demand in the opening statement merely to show a pattern of conduct, rather than to submit it to the jury for any substantive determination of Federal's obligations with respect to that underlying claim. (*Id.* at 10-11.) Andersen further argues that it was not required to raise claims concerning the Hoffman Arbitration Demand in *Andersen I*, because those claims did not arise from the same set of operative facts: because the Hoffman Arbitration Demand was filed and submitted to Federal well after Federal filed its first complaint in *Andersen I*, Andersen maintains, it was under no obligation to amend its counterclaims to add claims arising after that initial filing. (*Id.* at 7-9.) Finally, Andersen contends that the fact that the *Andersen I* jury rendered a verdict with regard to the claim demands contained in the Election Letters, including those from Hoffman and Wade, does not establish that the jury determined Federal's obligations with regard to the separate and later-filed Hoffman Arbitration Demand.[8] (*Id.* at 9.)

For several reasons, the court finds Andersen's arguments unpersuasive. According to Andersen, it "referred briefly" and "introduced some evidence related to" the Hoffman Arbitration Demand in *Andersen I* "only to show a pattern of conduct by Federal to delay and refuse to

---

[8] Andersen also argues that the fact that its current claims arise from the same insurance contract that was at issue in *Andersen I*, should not operate to bar this action. (*Id.* at 11-12.) Federal at no point contends that *res judicata* precludes Andersen's claims merely because they arise from the same insurance policy, however, so the court need not address this argument.

promptly undertake its defense obligations . . . and to show that Andersen was quick to set up a meeting" with Federal lead adjuster Smith, thus "counter[ing] Federal's assertions that Andersen was purposefully uncooperative." (Pl.'s Resp., at 10.) Citing *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir. 1998), Andersen contends that such "evidentiary references to events that occurred after a suit was filed do not establish a basis for claims preclusion in a later action challenging those events." (*Id.*) In the court's view, this argument relies on an unconvincing characterization of Andersen's discussion of the Hoffman Arbitration Demand during the *Andersen I* trial. Indeed, the record of Andersen's opening statement to the jury in that case includes far more than mere "evidentiary references" for any limited purpose of showing a pattern of conduct.

In the opening statement, Andersen's counsel described the meeting in which Andersen notified Smith of the Hoffman Arbitration Demand, noted that Andersen gave a copy of that claim to Federal, and told the jury that Smith had made no comparison with the Policy and provided Andersen with no response. (*Andersen I* Tr. at 48:7-17 (2/21/06), Ex. 4 to Def.'s Mem.) Shortly thereafter, counsel stated the following:

> And this Hoffman arbitration we talked about, we're still sitting here today. There's still no response from Mr. Smith. We're still waiting on that one. You're going to have to ask yourself: Did Federal really want to help Andersen—really want to defend?

> The Answer is pretty clear: No, it didn't. It breached.

(*Id.* at 51:13-19 (emphasis added).) This language is incompatible with the notion that Andersen never asked the jury to consider whether Federal breached a duty to defend the Hoffman claim.

Even more damaging to Andersen's position are the slides accompanying its opening statement. As noted, four slides, each containing the identical heading "Did Federal Compare the Allegations to the Policy and 'MAKE THAT CALL?'", listed the underlying claims submitted by Andersen to Federal, organized by four submission dates. The word "No" followed each claim, answering the question posed in the heading; a "check" in a box labeled "Breach" appeared beside

each claim as well. (*Andersen I* Demonstrative Slides, Ex. 5 to Def.'s Mem.) The fourth slide listed the Hoffman Arbitration Demand, in a format identical to the other three. Similarly, another slide, labeled "Federal Had What It Needed and Requested", listed the same claims, organized again in four groups by month and date; the Hoffman Arbitration Demand (July 2005) was the fourth. (*Id.*) A column heading asked "Was Andersen Unresponsive and Uncooperative?" and after each of the four groups, including the July 2005 submission consisting of the Hoffman Arbitration Demand, the answer was "No." (*Id.*) In the court's view, the only reasonable interpretation of these slides, especially in conjunction with the language in Andersen's opening statement, is that Andersen asked the jury to conclude that Federal had breached its duty to defend the Hoffman Arbitration Demand, just as Federal had assertedly breached its duty to defend the other three groups of claims; and that Andersen further asked the jury to find that Andersen had not relieved Federal of that duty by being unresponsive or uncooperative.

Andersen points out that neither the jury instructions nor the verdict form in *Andersen I* referred to the Hoffman Arbitration Demand. The verdict form, moreover, asked the jury to decide, with regard to each underlying claim, the twin questions of whether Federal breached and whether Andersen's behavior relieved Federal of its duty, but contained no similar questions with regard to the Hoffman Arbitration Demand. According to Andersen, this establishes that claims regarding the Hoffman Arbitration Demand were "*never* submitted to the jury for resolution," and thus were not actually tried and decided in *Andersen I*. (Pl.'s Resp., at 7, 10 (emphasis in original).)

Significantly, Andersen fails to explain *why* it did not submit the Hoffman Arbitration Demand to the jury, in light of the fact that it submitted to the jury the other three groups of underlying claims listed on its opening statement slides. Indeed, the parties do not identify any other references to the Hoffman claim, apart from those in Andersen's opening statement, that may have occurred during the *Andersen I* trial. The materials the parties have attached to their briefs provide no clue as to whether Andersen attempted to submit evidence of the Hoffman claim, whether Federal

objected, whether Andersen explained to the court its decision not to proceed with proof of the Hoffman claim, or whether Andersen attempted to somehow preserve its claims. Moreover, there is no evidence that the verdict form in *Andersen I* had been prepared before trial; indeed, the *Andersen I* docket reveals that the parties first submitted proposed verdict forms upon the court's request on February 28, 2006, immediately before jury deliberations began on March 1, 2006. (*Andersen I* Parties' Submissions to the Court Regarding Multiple Claims/Multiple Parties, and Parties' Proposed Verdict Forms (286).) Given that Federal did not object to Andersen's references to the Hoffman Arbitration Demand, the court is unable to ascertain why Andersen asked the jury at the outset to find that Federal breached its duty with respect to that claim, and than abandoned that request by the time the case went to the jury.

In any event, Andersen's argument appears to confuse *res judicata* with collateral estoppel. As noted, the latter precludes only those issues that have been actually litigated and decided in a prior proceeding, whereas *res judicata* precludes claims that "were or could have been raised" previously. *See Meyer*, 36 F.3d at 1378 n.1. Here, the question of whether any claims relating to the Hoffman Arbitration Demand "could have been raised" may be academic, for by arguing to the jury that Federal breached its duties with respect to that demand, and that Andersen had not been uncooperative and unresponsive, those issues arguably "were" in fact "raised." *See Donovan*, 778 F.2d at 301 (stating the rule of *res judicata* that a final judgment on the merits in an action precludes the parties from "relitigating issues that *were* or could have been raised in that action") (quoting *Allen*, 449 U.S. at 94) (emphasis added). By seeking to avoid the preclusive effect of its references to the Hoffman Arbitration Demand in *Andersen I*, Andersen effectively asks the court to find that the doctrine of *res judicata* contains a "loophole" that prevents claim preclusion where a party raises a claim at the beginning of trial, but abandons that claim before the case goes to the jury. Andersen cites to no authority in support of this proposition, and this court is aware of none.

Andersen's reliance on *Pleming* is unavailing. The plaintiff in *Pleming*, a laborer, applied

for a lower-paying clerical position with her employer a year after suffering a back injury. 142 F.3d at 1355. Denied the position, she filed a federal employment discrimination suit in August 1994, alleging race and disability discrimination. *Id.* In May 1995, she learned in the course of discovery that two similar clerical positions had become available in October 1994, which the defendant filled without notifying her. *Id.* Although she never amended her complaint to include allegations arising from those incidents, she referred to them in her briefs as proof that the employer's stated reason for having denied her the earlier position—a policy against allowing employees to transfer to lower-paying jobs—was a pretext. *Id.* at 1355-56. The court granted summary judgment for the employer, finding that the plaintiff had failed to show pretext; thereafter, she filed another complaint alleging discrimination and retaliation based on the company's decision to hire other applicants for the October 1994 positions.[9] *Id.* at 1356. The defendant filed a motion to dismiss on *res judicata* and/or collateral estoppel grounds, which the district court granted. *Id.*

The Eleventh Circuit reversed. The court noted that because the events giving rise to the second suit arose after the plaintiff had filed her complaint in the first suit, she had not been obligated to amend her complaint to add those claims. *Id.* at 1357. The employer argued, however, that she had nonetheless asserted claims concerning the October 1994 positions by referring to them in her attempt to argue pretext, citing language from a previous Eleventh Circuit case that noted that *res judicata* could preclude claims "*actually* asserted by supplemental pleadings *or otherwise* in the earlier action." *Id.* (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (second emphasis supplied in *Pleming*)). The court disagreed, explaining that a claim can be "otherwise" asserted for *res judicata* purposes only in accordance with the Federal Rules of Civil Procedure; in addition to amending a pleading, a claim can be asserted in a pretrial order,

_____

[9] Although the initial summary judgment ruling is unpublished, the district court in the course of the second litigation noted that the company used a temp agency to fill the two positions, rather than transfer any current employees. *Pleming v. Universal-Rundle Corp.*, 68 F. Supp. 2d 1329, 1331 (N.D. Ga. 1999), *remanded from Pleming*, 142 F.3d 1354.

or where an issue is tried with the parties' express or implied consent.  *Id.* at 1358 (citing FED. R. CIV. P. 15(b) & 16(e)).  None of these had occurred in the first suit: no pretrial order had been filed, and because the employer in fact had objected to plaintiff's references in her briefs to the October 1994 positions, implied consent was not a possibility.  *Id.*  The court concluded that the plaintiff's references to the employer's decisions regarding those positions in the first action, to show pretext, were insufficient to put substantive claims concerning those decisions before the court, such as would preclude her from pursuing them in the second action.[10]  *Id.* at 1359.

*Pleming* is readily distinguishable from the present circumstances.  There, it was clear that the purpose of the plaintiff's references, in her first lawsuit's briefs, to the subject of her second lawsuit—the employer's filling of the positions that had opened up in October 1994—was an attempt to prove a different claim—the discrimination claim in the first lawsuit, arising from the employer's refusal to hire her for the earlier-available position.  Here, it is not at all clear that by telling the jury that Federal had breached its duty to defend the Hoffman Arbitration Demand, Andersen was in fact merely attempting to show that Federal had breached with respect to the other underlying claims.  As noted, Andersen, in its four demonstrative slides listing underlying claims for which Federal allegedly breached its duty to defend, presented allegations regarding the Hoffman Arbitration Demand in the same manner as the other underlying claims, all of which were indeed submitted to the jury with instructions to determine Federal's obligations; the slide containing the Hoffman Arbitration Demand was virtually identical to the three others.  If anything, it suggested even more strongly that Federal had breached, as it stated "more than 6 months later—STILL NO RESPONSE FROM FEDERAL".  (*Andersen I* Demonstrative Slides, Ex. 5 to Def.'s Mem.)  This identical presentation of the underlying claims does not suggest that the Hoffman Arbitration

---

[10]     For similar reasons, the court concluded that collateral estoppel did not apply because the plaintiff did not "actually litigate" the issue of whether the employer's filling of the October 1994 positions constituted independent acts of discrimination.  *Pleming*, 142 F.3d at 1360.

Demand—or any particular claim demand—was presented for some ulterior evidentiary purpose that differentiated it from the other claims. Moreover, if Andersen's purpose in bringing the Hoffman Arbitration Demand to the jury's attention indeed was merely to provide evidentiary support for allegations relating to other claim demands, Andersen fails to explain how such evidence would even be relevant: Federal's conduct in response to the Hoffman Arbitration Demand, noticed to Federal in July 2005, would not be at all probative of whether Federal breached its duties with respect to claim demands noticed to Federal in May 2002, September 2002, and March 2003. In short, Andersen's references to the Hoffman Arbitration Demand in *Andersen I*, unlike the references to the October 1994 positions in the *Pleming* plaintiff's first lawsuit, cannot plausibly be interpreted as having some purpose other than what the references themselves suggest: a claim that Federal breached its duties with respect to that underlying claim demand.[11]

*Pleming* is also distinguishable because the defendant in that case had in fact objected to the plaintiff's references in her briefs to the October 1994 positions, an objection the court found significant because it precluded any possibility that claims arising from the employer's filling of those positions had been tried with the parties' implied consent. 142 F.3d at 1358. Here, as noted, Federal did not object in *Andersen I* to Andersen's references to the Hoffman Arbitration Demand,

---

[11]     Plaintiff's citation to another Eleventh Circuit case is equally unpersuasive. In *Wu v. Thomas*, 863 F.2d 1543, 1548-49 (11th Cir. 1989), the court rejected the defendant's argument that the plaintiff had "implicitly amended her complaint to include a claim of retaliation" in her initial action, thus precluding any later retaliation claim, merely because some of the testimony "touched on retaliatory actions taken" by the defendant. As explained, Andersen did far more than merely "touch upon" the Hoffman Arbitration Demand in *Andersen I*.

The court also notes that the Eleventh Circuit, citing *Pleming*, has observed that while *res judicata* ordinarily will not bar a claim "that was not in existence at the time of the original action," such a claim is nonetheless precluded where "the facts underlying the claim were actually raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001); *see also Martin K. Eby Const. Co., Inc. v. Jacobs Civil, Inc.*, No. 3:05-cv-394-J-32TEM, 2006 WL 1881359, at *10 (M.D. Fla. July 6, 2006) (noting that claims that "could have been brought" in an earlier action include "claims actually asserted by supplemental pleadings or otherwise in he earlier action," and that "*[r]es judicata* will also bar a claim if 'the facts underlying the claim were actually raised' in the earlier action.") (quoting *Piper*, 244 F.3d at 1299).

so far as the court is aware.

The court concludes here that in the earlier litigation, Andersen did raise the issue of whether Federal breached its duties with regard to the Hoffman Arbitration Demand. Andersen's remaining arguments, which contend that such a claim did not involve issues that "could have been raised" in *Andersen I* because they did not arise from the same "core of operative facts," *Allied-Signal,* 985 F.2d at 913, are therefore largely beside the point. Andersen contends that because the Hoffman Arbitration demand was filed and noticed to Federal well after Federal filed its initial complaint in *Andersen I*, Andersen was not obliged to amend its pleadings to add a counterclaim arising after the filing of that original complaint. (*Id.* at 7-9.) That Andersen was not *obliged* to amend its counterclaims does not, of course, establish that Andersen was barred from doing so. It argues, however, that it was in fact barred from adding a claim regarding the Hoffman Arbitration Demand because discovery in *Andersen I* had closed by the time that claim demand was filed and noticed to Federal, and summary judgment briefing was complete. (*Id.* at 8.) Indeed, Andersen notes that Federal itself elected not to amend its pleadings in response to the Huelsmann Arbitration, which, Andersen maintains, illustrates that later-filed claim demands could not be added to *Andersen I.*

Andersen is correct that, as a general matter, a party is not required to amend its pleadings to add a claim that arose from a "separate wrong," after the filing of an initial complaint, in order to preserve that claim and prevent the operation of *res judicata. See Perkins v. Bd. of Trustees of Univ. of Ill.*, 116 F.3d 235, 236 (7th Cir. 1997) (*res judicata* requires joinder of claims based on the same, or nearly the same, factual allegations, "without compelling the joinder of claims arising from separate wrongs," i.e., where "wrongful events are separated by time and function"); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (citation omitted) (where "defendant engages in actionable conduct" after suit is filed, "plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct[,]" because "as a matter of logic, when the

second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play"); *Allied-Signal*, 985 F.2d at 914-15 (citations omitted) (noting that a litigant "is not obligated to bring all claims together if they do not arise out of the same transaction"; therefore, "plaintiffs need not amend filings to include issues that arise after the original suit is lodged."). None of these cases, however, addresses the effect of *res judicata* where, as here, a litigant does not formally amend its pleadings but nonetheless chooses to present a later-arising claim at trial, without objection from the opponent. If *res judicata* were not to apply in such circumstances, the doctrine would be toothless: a party seeking to avoid preclusion could simply choose not to amend its pleadings, test the later-arising claim before a jury, and, if unsuccessful, bring a separate action for another attempt. As the Seventh Circuit explained in *Allied-Signal*, the *res judicata* inquiry "is intended to discover whether the plaintiff could have raised the issue in the first suit." 985 F.2d at 913 (citing *Moitie*, 452 U.S. at 398). The fact that Andersen did in fact raise the specter of Federal's alleged breaches concerning the Hoffman Arbitration Demand essentially ends the inquiry.

For the same reasons, it is immaterial that Andersen received the Hoffman Arbitration Demand in June 2005, after the close of discovery and the completion of summary judgment briefing in *Andersen I*. Although Andersen may not have had any obligation to amend its counterclaims in such circumstances, it could have sought leave of the court to do so either before or even after the February 2006 trial, if it planned to present that underlying claim to the jury along with the other claim demands—as Andersen in fact chose to do. *See* FED. R. CIV. P. 15(b) (allowing amendment of pleadings to conform to the evidence at trial, even after judgment). Similarly, the fact that Federal elected not to amend its pleadings to include the Huelsmann Arbitration is irrelevant, as Andersen does not suggest that that claim was raised or in any way involved in the *Andersen I* proceedings.

Andersen's argument that the jury in *Andersen I* did not determine Federal's obligations with

respect to the Hoffman Arbitration Demand, merely by virtue of deciding Federal's obligations with respect to the Election Letters, ultimately misses the mark as well. Andersen is correct that the *Andersen I* jury was instructed to treat the Election Letters separately from the arbitration demands and lawsuits that constituted the underlying claims in that case. Indeed, the verdict suggests that the jury followed those instructions: it found that Federal was *not* relieved of its duty to defend with respect to the Waters Action, the Small Arbitration, and the Viets Arbitration, even though Election Letters from Waters, Small, and Viets were among the 214 for which the jury found Federal *had* been relieved of its duty to defend. (*Andersen I* Verdict Form, Ex. 11 to Pl.'s Resp.) Although Judge St. Eve subsequently issued a directed verdict that Federal was relieved of its duty with respect to the Small and Viets Arbitrations, (*Andersen I* Order of 4/4/06 (325)), the end result nonetheless left Federal unrelieved of its duty to defend the Waters Action, while relieved of that duty with respect to Waters' Election Letter. This gives rise to an inference that claim demands in the form of lawsuits and arbitration demands were indeed separate from claim demands in the form of Election Letters. Moreover, as Andersen points out, the Hoffman Arbitration Demand made additional allegations not found in Hoffman's or Wade's letters: the latter requested a lump sum ERB payment pursuant to Andersen's partnership agreement, while the former also stated allegations regarding a monthly BRB stipend and breaches of fiduciary duty. Resolving inferences in favor of Andersen for purposes of his motion, it would be reasonable to conclude that the Hoffman Arbitration Demand did not arise from the same "operative facts" as the Election Letters authored by Hoffman and Wade; therefore, Andersen's present claims relating to the Hoffman Arbitration Demand may not have been claims that "could have been raised" in *Andersen I*.

As explained above, however, Andersen *did* present those claims to the jury in *Andersen I*: in its opening statement, it argued that Federal had breached its duty to defend the Hoffman Arbitration Demand, and that Andersen had not relieved Federal of that duty by being uncooperative or unresponsive. These contentions were presented to the jury in the same manner

as the other three groups of underlying claims, all of which went to the jury at the close of trial, and Federal did not object to these references to the Hoffman claim. Moreover, Andersen has identified no part of the *Andersen I* proceedings in which it explained its decision not to proceed with the Hoffman claim, or formally withdrew any claim relating to the matter, or was forced to drop such a claim due to any (sustained) objection from Federal. If any of these circumstances had been present, there might be a basis for concluding that the parties understood that Andersen intended to "carve out" any claims relating to the Hoffman Arbitration Demand, and preserve them for potential future litigation. In the absence of any contention that there was such an understanding, or of any other plausible explanation, it appears that Andersen simply abandoned its claims with respect to the Hoffman Arbitration Demand without comment.

Andersen's claims in this lawsuit, to the extent they seek a declaratory judgment and allege a breach of Federal's duty to defend with respect to the Hoffman Arbitration Demand, are therefore barred by *res judicata*.

### B. Collateral Estoppel

Because the court finds Andersen's breach of contract and declaratory judgment claims barred by *res judicata*, the court need not reach Federal's alternative argument that the complaint must be dismissed on collateral estoppel grounds. The court notes, however, that Federal would likely not be entitled to dismissal on this basis.

Collateral estoppel, unlike *res judicata*, operates to bar relitigation of issues of law and fact, rather than claims, and only those issues that have been actually litigated and decided in a previous action. *See Pleming*, 142 F.3d at 1359; *Meyer*, 36 F.3d at 1378 n.1. Collateral estoppel applies where: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th cir. 1995) (citations

omitted).  The parties here dispute the first two elements.  Federal contends that the issue of whether Federal breached its duty to defend the Hoffman Arbitration Demand was actually litigated in *Andersen I* because (1) Andersen presented that issue to the jury; and (2) the jury found that Federal was relieved of its duty with respect to Hoffman's and Wade's claim demands in the form of their Election Letters.  (Def.'s Mem., at 10.)  Andersen argues that no identical issue was litigated in *Andersen I* because issues relating to Federal's duty to defend the Hoffman Arbitration Demand "were never presented to, nor decided by, the jury in *Andersen I*."  (Pl.'s Resp., at 13.)  Andersen maintains that its specific references to that demand in *Andersen I* did not amount to having "actually litigated" those issues; furthermore, the jury, in its determination with respect to the Hoffman and Wade Letters, resolved different issues than those presented by the Hoffman Arbitration Demand.  (*Id.* at 13-15.)

As discussed above, the court has concluded that Andersen did in fact present the issue of Federal's alleged breach with respect to the Hoffman Arbitration Demand to the jury in *Andersen I*; that issue is identical to the issue Andersen presents in the instant complaint.  The Seventh Circuit has explained, however, that collateral estoppel only bars an issue that has been both litigated *and* decided:

> Collateral estoppel applies, precluding relitigation of a question, only if the question was *actually adjudicated* . . . .  It is sometimes difficult, however, to distinguish in practice between a case in which a question was not adjudicated and one in which the balance of evidence inclined so decisively on one side of the question that the adjudication was over in a wink (maybe because the party who had the burden of proof presented no evidence), in which event collateral estoppel still applies. . . .  A helpful approach to drawing this distinction is to separate adjudication into litigation and decision. . . .  A question must be litigated, *but it also must be decided*, for collateral estoppel to bar its relitigation.

*Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 792 (7th Cir. 1992) (internal citations omitted) (emphasis added).  An issue can be "litigated" even if no evidence is introduced; but it must also be resolved, such as where a party designates an issue for trial in a pretrial order, but introduces no evidence and thus fails to carry its burden of proof.  *Id.* at 792-93.

It does not appear that the jury in *Andersen I* actually decided whether Federal breached its duty to defend, nor whether Andersen relieved Federal of that duty, with respect to the Hoffman Arbitration Demand specifically. Andersen so argued at the outset, as noted, but the jury's verdict form expressed the jury's determinations regarding Federal's obligations only with respect to the underlying claims noticed to Federal in May 2002, September 2002, and March 2003. (*Andersen I* Final Jury Instr., Ex. 9 to Pl.'s Resp.) It may be that Andersen concluded that it would not be able to prove a breach related to the Hoffman claim; in such circumstances, Andersen would have simply failed to carry its burden of proof and that issue would be considered "actually litigated." *See Ashland Oil*, 951 F.2d at 792. The court need not speculate, however, as to why Andersen chose not to pursue that claim, for regardless of whether the issues relating to the Hoffman Arbitration Demand were actually decided in *Andersen I,* Andersen's presentation of those issues to the jury, as explained above, is sufficient to preclude Andersen's present claims under *res judicata*, which contains no "actually litigated" requirement.

Federal's other collateral estoppel argument—that Federal's obligations with respect to the Hoffman Arbitration Demand had been determined by virtue of the jury's findings with respect to Hoffman's and Wade's Election Letters—would likely be unsuccessful, as well. As noted, those underlying claim demands raised different issues: in their Election Letters, Hoffman and Wade claimed that Andersen's partnership agreement entitled them to a lump sum ERB payment, while the Hoffman Arbitration Demand alleged that Andersen had rescinded an agreement concerning monthly BRB stipends, and that Andersen was responsible for various breaches of fiduciary duty on the part of active partners. Thus, the jury's determination that Federal had been relieved of its duty to defend Hoffman's and Wade's claim demands in their Election Letters, does not necessary establish that the jury also determined Federal's obligations with respect to the later-filed arbitration demand.

In any event, the court need not decide whether the issues raised in the present action are

indeed identical to those raised in *Andersen I*, nor whether those issues had been "actually litigated" in that proceeding. As explained above, Andersen's present claims concerning Federal's obligations pursuant to the Policy are barred by *res judicata*.

### III.    Andersen's Illinois Insurance Code Claim

As noted, the court in *Andersen I* bifurcated for trial the issues of whether Federal breached its duty to defend underlying claim demands, or whether Federal was relieved of that duty, from the court's separate resolution of Andersen's counterclaim under Section 155 of the Illinois Insurance Code. (*Andersen I* Order of 1/03/2006 (196).) Section 155 allows for the recovery of attorneys fees and other costs against an insurer who acted vexatiously and unreasonably in delaying or denying a claim. It provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of [three alternative amounts].

215 ILCS 5/155. Illinois courts have explained that "Section 155 of the [Illinois Insurance] Code is the legislature's remedy to an insured . . . 'who encounters unnecessary difficulties when an insurer withholds policy benefits.'" *Peerless Enter., Inc. v. Kruse*, 317 Ill. App. 3d 133,144, 738 N.E.2d 988, 999 (2d Dist. 2000) (quoting *Richardson v. Ill. Power Co.*, 217 Ill. App. 3d 708, 711, 577 N.E.2d 823, 826 (5th Dist. 1991)). The provision "is intended to penalize vexatious delay or rejection of legitimate claims by insurance companies. If the insurer vexatiously delays or rejects legitimate claims, it is responsible for the expense resulting from the insured's efforts to prosecute the claim." *Estate of Price v. Universal Cas. Co.*, 334 Ill. App. 3d 1010, 1012, 779 N.E.2d 384, 387 (1st Dist. 2002). Section 155 is applicable to a declaratory judgment action premised on a breach of the duty to defend. *Matsushita Elec. Corp. of Am. v. Home Indem. Co.*, 907 F. Supp. 1193, 1200 (N.D. Ill. 1995) (citing *Richardson*, 217 Ill. App. 3d at 711, 577 N.E.2d at 826).

The court in *Andersen I* denied Andersen's request for Section 155 damages on January 31, 2007, concluding that Federal had not been "vexatious and unreasonable" in responding to the Waters Action—the only part of the jury's verdict still standing in favor of Andersen. (*Andersen I* Order of 1/31/07 (403), at 2-3.) At the time briefing was completed on the present motion to dismiss, Judge St. Eve had not yet issued that ruling; consequently the parties have devoted little or no attention to the viability of Andersen's Section 155 claim in this action. In a footnote to its reply brief, Federal asserts that Andersen has not argued that its Section 155 claim "should be treated any differently under the *res judicata* doctrine [than] its claims for breach of contract and declaratory judgment," and contends, without elaboration or citation to any authority, that if the court finds those claims barred, "it necessarily should dismiss Andersen's complaint in its entirety." (Reply Memorandum in Support of Federal Insurance Company's Motion to Dismiss, at 3 n.2.) Andersen refers to its Section 155 claim only once, in passing, arguing that because collateral estoppel does not apply, this court "will need to consider whether Federal's conduct with respect to its handling of the Hoffman Arbitration . . . is such that Federal is estopped to deny coverage under Illinois law and is subject to Section 155 liability . . . ." (Pl.'s Resp., at 14.) Andersen does not explain what should happen to its Section 155 claim in the event the court finds, as it does, that Andersen's breach of contract and declaratory judgment claims are barred by *res judicata*.

Without the benefit of the parties' arguments regarding the issue, the court is reluctant to dismiss Andersen's Section 155 claim at this time, as it dismisses Andersen's breach of contract and declaratory judgment claims. Federal's *res judicata* and collateral estoppel arguments are inapplicable. Because Andersen's Section 155 counterclaim in *Andersen I* was bifurcated from the trial, any such claim with respect to the Hoffman Arbitration Demand was not one that "could have been raised" there for *res judicata* purposes. Nor does Federal contend that the issue of whether its conduct was "vexatious and unreasonable" with regard to the Hoffman claim was either raised or "actually litigated" in *Andersen I*; and Judge St. Eve's separate ruling on Andersen's Section 155

counterclaim considered Federal's conduct only in regard to the Waters Action.

It may be that because Andersen's is precluded from bringing its declaratory judgment and breach of contract claims, it cannot, under Illinois law, maintain a stand-alone Section 155 claim. *See Yamada Corp. v. Yasuda Fire and Marine Ins. Co., Ltd.*, 305 Ill. App. 3d 362, 369, 712 N.E.2d 926, 931 (2d Dist. 1999) ("without a duty to defend, there can be no breach of contract or violation of . . . section 155 of the Illinois Insurance Code.") To this end, the court will entertain a separate Rule 12(b)(6) motion from Federal; the court, however, declines to dismiss Andersen's Section 155 claim on grounds of *res judicata* or collateral estoppel, upon which Federal's present motion is based.

## CONCLUSION

For the foregoing reasons, Federal's motion to dismiss (19) is granted with respect to Andersen's claims for declaratory judgment and breach of contract (Counts I and II), and denied with respect to its claim under Section 155 of the Illinois Insurance Code (Count III).

ENTER:

Dated: March 16, 2007

_____
REBECCA R. PALLMEYER
United States District Judge